STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**Donell D. Lee,**
**Petitioner Below, Petitioner**

**FILED**

September 19, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-1314** (Marion County 11-C-140)

**David Ballard, Warden, Mount Olive**
**Correctional Complex,**
**Respondent Below, Respondents**

**MEMORANDUM DECISION**

Petitioner Donell D. Lee, by counsel Sherman L. Lambert, Sr., appeals the circuit court's November 22, 2013, order denying his petition for writ of habeas corpus. Respondent, David Ballard, Warden, Mount Olive Correctional Complex, by counsel Julie A. Warren, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial in August of 2008, petitioner was convicted of first degree murder and conspiracy to commit first degree murder in relation to the fatal shooting of Derrick Osborne. Petitioner was sentenced to life in prison with the possibility of parole for the murder conviction and one to five years in prison for the conspiracy conviction, with the sentences to run concurrently. Petitioner was one of four co-defendants charged in relation to the murder of Mr. Osborne.[1]

Petitioner filed his direct appeal with this Court on January 19, 2010, raising five assignments of error: (1) insufficiency of the evidence; (2) withholding of exculpatory evidence

---

[1] The other co-defendants were Steven Podolsky, Lafayette Jenkins, and Lincoln Taylor. According to petitioner, Mr. Podolsky pled guilty to conspiracy to commit murder and accessory after the fact, and the charge of first degree murder was dismissed pursuant to a plea agreement. Also pursuant to a plea agreement, Mr. Jenkins pled guilty to voluntary manslaughter and conspiracy to commit murder. Mr. Taylor's charges proceeded to jury trial, where he was acquitted of conspiracy to commit murder; however, the jury was unable to reach a verdict on the first degree murder charge. Thereafter, Mr. Taylor pled guilty to second degree murder.

1

and inappropriate comments from the prosecutor during opening statements and closing arguments; (3) false testimony to the grand jury; (4) error in the denial of his motion for directed verdict; and (5) error in the denial of his post-verdict motion for judgment of acquittal and for a new trial.

On July 12, 2010, this Court refused petitioner's direct appeal by order and without argument.[2] Thereafter, petitioner filed a motion for reconsideration and an amended petition for direct appeal. On October 13, 2010, this Court entered an order refusing petitioner's motion to reconsider its prior refusal order of July 12, 2010.

On May 26, 2011, petitioner filed a petition for a writ of habeas corpus in circuit court in which he raised eight arguments in support of habeas relief: (1) insufficiency of the evidence; (2) withholding of exculpatory evidence; (3) improper comments by the prosecutor regarding the evidence during opening statement and closing argument; (4) false testimony to the grand jury; (5) error in the denial of his motion for a directed verdict; (6) error in the denial of his post-trial motion for acquittal and for a new trial; (7) unfair pre-trial publicity; and (8) the cumulative effect of all errors resulted in a denial of due process.

On September 9, 2011, the circuit court entered an order denying the habeas petition without holding an evidentiary hearing. The circuit court found that six of the eight issues petitioner raised in his habeas petition had been previously and finally adjudicated by this Court's July 12, 2010, refusal order. As to the other two arguments, the circuit court denied them as lacking merit or factual support. Petitioner appealed to this Court and the matter was docketed as No. 11-1781. By order entered on January 9, 2013, this Court summarily reversed, in part, and affirmed, in part, the circuit court's September 9, 2011, order. Specifically, this Court found that the "circuit court properly denied habeas relief on the ground of unfair pre-trial publicity, but the circuit court erred in its determination that grounds raised in the petition for appeal that was denied under this Court's prior practice need not be addressed in an omnibus habeas corpus proceeding." As a result, this Court remanded the matter to the circuit court for further proceedings.

Consistent with this Court's January 9, 2013, order, the circuit court conducted an omnibus hearing on September 19, 2013. Petitioner appeared in person and with counsel. The prosecuting attorney appeared on behalf of respondent. During the hearing, the circuit court heard the arguments of counsel, but no evidence was admitted[3] and no witnesses testified. By

---

[2] The circuit court mistakenly refers to this Court's refusal order as a "memorandum opinion."

[3] During the omnibus hearing, petitioner's counsel submitted a three-ring binder of documents, asserting that the documents contained portions of falsified grand jury testimony. However, as the circuit court noted, petitioner's counsel made no motion to have the documents admitted as evidence; he failed to authenticate the documents; and no witnesses were called to corroborate counsel's assertion that the witnesses lied to the grand jury. The documents, consisting of approximately 980 pages, are included in the appendix for petitioner's present appeal, as Volumes II through V.

order entered November 22, 2013, the circuit court addressed the eight arguments presented by petitioner and denied the habeas petition. Petitioner now appeals to this Court.

We review an order denying a petition for habeas corpus under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner raises the following general assignment of error: "The circuit court erroneously dismissed petitioner's petition for writ of habeas corpus and violated petitioner's constitutional rights guaranteed by the due process clause of the fourteenth amendment of the United States Constitution and under Article III, § 10 and § 14 of the West Virginia Constitution." In support of his appeal, petitioner raises the same arguments raised before the circuit court, except that he does not allege error related to the circuit court's ruling on pre-trial publicity.

Our review of the record reflects no error or abuse of discretion by the circuit court. Having reviewed the circuit court's "Final Order Denying Petition for Writ of Habeas Corpus," entered on November 22, 2013, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the arguments raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 19, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

3

# IN THE CIRCUIT COURT OF MARION COUNTY, WEST VIRGINIA
## DIVISION II

DONELL D. LEE,

**PETITIONER,**

vs.

STATE OF WEST VIRGINIA,

**RESPONDENT.**

Civil Action No. 11-C-140
(Underlying Case Nos.: 08-F-1 & 08-F-78)

**FINAL ORDER**

## FINAL ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This Court is in receipt of, and has reviewed, a Petition for Writ of Habeas Corpus Ad Subjiciendum Under West Virginia Code § 53-4A-1 [hereinafter petition] submitted by attorney Sherman L. Lambert on behalf of the petitioner, Donell D. Lee. In his petition, Mr. Lee alleges that his due process rights were violated and that he is being illegally imprisoned based on the following eight grounds: (1) insufficient evidence; (2) the prosecution withheld exculpatory evidence; (3) improper prosecutorial comments made during opening statement and closing argument; (4) false testimony presented to the grand jury; (5) improper denial of his motion for a directed verdict; (6) improper denial of his motion for post-verdict judgment of acquittal and motion for new trial; (7) cumulative effective of all errors; and (8) unfair pretrial publicity. Patrick N. Wilson, Marion County Prosecuting Attorney, did not file a written response on behalf of the respondent, the State of West Virginia.

After due consideration of the petition, the entire record and the legal issues presented, as well as the arguments of the parties' counsel at the omnibus hearing conducted by this Court on September 19, 2013, this Court is of the opinion that the petition should be refused and that Mr.

1

Lee's Petition for Writ of Habeas Corpus should be dismissed. In support of this opinion, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On or about the 3rd day of January, 2008, in Case No. 08-F-1, the Marion County Grand Jury indicted Donell D. Lee for committing the offense of Murder in the First Degree by unlawfully, feloniously, willfully, maliciously, intentionally, deliberately and premeditatedly causing the death of Derrick Osborne by the use of a firearm, a felony and violation of W. Va. Code §§ 61-2-1 and 2.

2. On or about the 9th day of June, 2008, in Case No. 08-F-78, an additional one (1) count indictment was returned against Mr. Lee by the June 2008 Grand Jury, charging Mr. Lee with committing the offense of Conspiracy to Commit Murder, a felony and violation of W. Va. Code § 61-10-31. Mr. Lee was one of four co-defendants charged with conspiracy to murder Mr. Osborne, the other co-defendants being Steven Podolsky, Lafayette Jenkins and Lincoln Taylor.

3. Mr. Podolsky pled guilty to the offense of Conspiracy to Commit Murder, as charged in Count II of the indictment in Marion County Circuit Court Case No. 07-F-206, and to the offense of Accessory After the Fact, as charged in the information in Marion County Circuit Court Case No. 08-M-3, on January 7, 2008. The Court deferred acceptance of Mr. Podolsky's guilty pleas until the resolution of the co-defendants' cases. Upon the Court's acceptance of said pleas, the State recommended dismissal of Count I in Case No. 07-F-206, Murder in the First Degree.

4. On May 1, 2008, Mr. Jenkins entered an Alford plea of guilty to the offense of Voluntary Manslaughter, a lesser included offense as to Count I of the indictment in Marion County Case No. 07-F-205, Murder in the First Degree. Mr. Jenkins also pled guilty to the offense of Conspiracy to Commit Murder, as charged in Count II of the indictment in Case No. 07-F-205.

2

Similar to the agreement reached in Mr. Podolsky's case, the Court deferred acceptance of said pleas until the resolution of co-defendant Lincoln Taylor's and Donell Lee's trials.

5.     Mr. Taylor's case proceeded to trial on September 15, 2008 and ended in a mistrial six days later. Mr. Taylor's second trial began on November 10, 2008 and ended on November 21, 2008. The jury acquitted Mr. Taylor of the Conspiracy to Commit Murder charge. However, the jury was unable to reach a verdict regarding the charge of Murder in the First Degree and a hung jury resulted on that charge, requiring the Court to declare a second mistrial.

6.     On April 29, 2010, Mr. Taylor, through his counsel, filed a § 2241 habeas corpus action with the United States District Court for the Northern District of West Virginia "to vindicate his constitutional rights protected under the Double Jeopardy Clause of the United States Constitution." In its Opinion/Report and Recommendation, the District Court found that the collateral estoppel component of the Double Jeopardy Clause precluded the State from asserting or arguing that Mr. Taylor was involved in a conspiracy to murder Mr. Osborne. However, the State was not precluded from presenting evidence to prove the required elements of Murder in the First Degree.

7.     On July 12, 2010, Mr. Taylor entered an Alford plea of guilty to the offense of Second Degree Murder.

8.     Mr. Lee's case proceeded to trial in August 2008. Mr. Podolsky and Mr. Jenkins testified at Mr. Lee's trial. At trial, Mr. Podolsky testified that he lied to his lawyer; that he was present when the gun was given to Mr. Taylor by co-defendant Mr. Jenkins; that he went to a Wal-Mart store with Mr. Taylor and purchased dark colored apparel in preparation of the murder; that he drove Mr. Taylor to a location contiguous to the scene of the crime; that he heard multiple gun shots, and immediately following the shots, Mr. Taylor came back to the vehicle and they drove

3

away; that he went to Mr. Jenkins's residence after the murder of Mr. Osborne; and that while at Mr. Jenkins's residence, he overheard Mr. Jenkins thank Mr. Taylor for killing Mr. Osborne.

9.      With respect to Mr. Lee's involvement in the murder, Mr. Podolsky testified, *inter alia*, to the following: (1) that co-defendant Lafayette Jenkins and Mr. Lee had an altercation with the victim; (2) that Mr. Jenkins and Mr. Lee felt that the victim was a threat to them; (3) that Mr. Jenkins and Mr. Lee had explained their problem with the victim to Mr. Podolsky and Mr. Taylor; (4) that Mr. Lee was present when Mr. Jenkins asked Mr. Taylor if he could "take out" the victim; (5) that Mr. Lee described what the victim looked like, what car he would be driving and pointed out the house where he could be located to Mr. Podolsky; (6) that Mr. Lee offered his gun for use in the murder; and (7) that Mr. Lee talked with Mr. Taylor, Mr. Jenkins and Mr. Podolsky about how the murder could take place. Lee Trial Tr. Vol. 1, 255, 258-59, 267-68, 271 and 273 (Aug. 25-29, 2008).

10.      Mr. Jenkins testified at Mr. Lee's trial that he lied to the police; that he sold narcotics; that he did not know anything about a .40 caliber pistol being stolen; that he received multiple telephone calls from Mr. Taylor after the murder; that Mr. Taylor did not call Mr. Lee after the murder because Mr. Lee did not have minutes on his phone and was unable to receive incoming telephone calls; that he did not instruct Mr. Taylor to report back to him after the murder; and that he was not part of the conspiracy.

11.      Although Mr. Lee did not testify at his trial, the State introduced into evidence and published to the jury an audio recording of an interview of Mr. Lee conducted by officers of the Fairmont City Police Department on July 2, 2007. During that interview, Mr. Lee admitted that in the course of conversations between Mr. Jenkins and Mr. Taylor about arranging the murder of Mr. Osborne, Mr. Lee described to Mr. Taylor what Mr. Osborne looked like; Mr. Lee described the car that Mr. Osborne would be driving; and that, during a "drive by" before the murder, Mr. Lee

4

pointed out to Mr. Taylor where Mr. Osborne lived and which door was the door to Mr. Osborne's residence. Mr. Lee confessed that "I was the only one who 100% knew where [Mr. Osborne] lived."

12. Mr. Lee was convicted of Murder in the First Degree and Conspiracy to Commit Murder on August 28, 2009.

13. On January 14, 2010, Mr. Lee filed a Motion to Extend Time to File a Petition of Appeal with the West Virginia Supreme Court and filed his Petition for Appeal on January 19, 2010.

14. Mr. Lee's January 19, 2010 petition argued five grounds in which his Court allegedly erred: (1) the jury verdicts were unsupported by substantial evidence to prove his guilt beyond a reasonable doubt that he committed the offenses of Murder in the First Degree and Conspiracy to Commit Murder; (2) the prosecutor withheld exculpatory evidence and made inappropriate comments during opening statement and closing argument; (3) false testimony was presented to the grand jury; (4) the trial court erred in denying his motion for directed verdict; and (5) the trial court erred in denying his motion for a post-verdict judgment of acquittal and motion for new trial.

15. On February 11, 2010, the West Virginia Supreme Court granted Mr. Lee's Motion to Extend Time and to File a Petition of Appeal and remanded the case to this Court for re-sentencing. On April 14, 2010, this Court resentenced Mr. Lee and provided him with an additional four months to file his Amended Petition of Appeal.

16. On July 12, 2010, the West Virginia Supreme Court issued a memorandum opinion stating that, "the [January 19, 2010] petition for appeal [had been] fully considered, and the Court was of the opinion to and did hereby refuse said petition for appeal." The Court also stated that "the petitioner's motion for reconsideration of refusal to grant appeal filed on July 9, 2010 will be taken up in due course during the September 2010 term of Court."

5

17. On July 13, 2010, Mr. Lee, through his counsel, filed a Motion for Reconsideration of Court's Refusal to Grant Appeal. Mr. Lee's motion stated that "on July 24, 2010, a deputy clerk from [the West Virginia Supreme Court of Appeals] telephoned Lee's counsel and advised that this Court refused to grant Lee an appeal in this matter. . . ." Mr. Lee further argued that his amended petition for appeal was "not due until on or before August 14, 2010." On October 13, 2010, the West Virginia Supreme Court issued an order denying Mr. Lee's Motion for Reconsideration of Court's Refusal to Grant Appeal.

18. On August 9, 2010, Mr. Lee filed his Amended Petition of Appeal with the West Virginia Supreme Court. In his amended petition, Mr. Lee argued the following grounds in which this Court allegedly erred: (1) the jury verdicts were unsupported by substantial evidence to prove his guilt beyond a reasonable doubt; (2) the prosecutor withheld exculpatory evidence and made inappropriate comments during opening statement and closing argument; (3) false testimony was provided to the grand jury; (4) the trial court erred in denying his motion for a directed verdict; and (5) the trial court erred in denying his motion for post-verdict judgment of acquittal and motion for new trial.

19. On May 26, 2011, Mr. Lee filed a Petition for Writ of Habeas Corpus Ad Subjicidendum Under West Virginia Code § 53-4A-1 with the Marion County Circuit Court Clerk. Mr. Lee's petition alleged eight grounds as a basis for his illegal detention, as follows: (1) his due process rights were violated because the jury convicted him when insufficient evidence existed to prove his guilt beyond a reasonable doubt for Murder in the First Degree and Conspiracy to Commit Murder; (2) Marion County Prosecuting Attorney Patrick N. Wilson withheld exculpatory evidence; (3) Mr. Wilson made improper comments regarding the evidence in the case during his opening statement and closing argument; (4) witnesses Amy Weekly, Albert Sigley and Carrie Short

6

provided false testimony to the grand jury to obtain an indictment against him for Murder in the First Degree and Conspiracy to Commit Murder; (5) the trial court erred when it denied his motion for directed verdict; (6) the trial court improperly denied his motion for post-verdict judgment of acquittal and motion for new trial; (7) the cumulative effect of all errors; and (8) unfair pretrial publicity. Mr. Lee waived each of the remaining claims under the Losh checklist. By order entered herein on September 9, 2011, this Court dismissed Mr. Lee's habeas petition, finding that six of the eight alleged grounds had been previously and finally adjudicated by the West Virginia Supreme Court of Appeals in its July 12, 2010 memorandum decision considering Mr. Lee's petition for appeal, and that the remaining two contentions did not warrant habeas corpus relief.

20.     On October 11, 2011, Mr. Lee, through his attorney Sherman L. Lambert, filed his Notice of Intent to Appeal with the Marion County Circuit Court Clerk, providing notice of his intent to appeal this Court's September 9, 2011 Opinion/Final Order Refusing Petition for Writ of Habeas Corpus Subjiciendum to the West Virginia Supreme Court of Appeals.

21.     On January 9, 2013, the West Virginia Supreme Court issued an opinion summarily affirming in part, and reversing in part, this Court's September 9, 2011 Opinion/Final Order refusing Mr. Lee's habeas corpus petition. Specifically, the Court found that this Court properly denied habeas relief on the ground of unfair pretrial publicity, but erred in its determination that all other grounds raised in Mr. Lee's petition need not be addressed in an omnibus hearing. Accordingly, the West Virginia Supreme Court remanded this matter to this Court for an evidentiary hearing.

22.     On September 19, 2013, this Court conducted an omnibus hearing in this case. Mr. Lee was present in person and by his attorney, Sherman L. Lambert. Marion County Prosecuting Attorney Patrick N. Wilson appeared on behalf of the respondent, the State of West Virginia.

7

During the hearing, the Court heard the arguments of counsel and received a binder of documents from the petitioner which was not offered, nor admitted, into evidence. No other evidence or witnesses were presented to the Court for its consideration of Mr. Lee's habeas petition at the omnibus hearing.

## CONCLUSIONS OF LAW

1. Mr. Lee filed his habeas petition pursuant to W. Va. Code § 53-4A-1(a) (1967), which provides that:

> Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the constitution of the United States or the constitution of this state, or both, or that the court was without jurisdiction to impose the sentence . . . may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief . . .

2. "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, Perdue v. Coiner, 156 W. Va. 467, 194 S.E.2d 657 (1973); State ex rel. Waldron v. Scott, 222 W. Va. 122, 663 S.E.2d 576 (2008); W. Va. Code § 53-4A-3(a); W. Va. R. Hab. Corp. 4(c). Such judgment must contain findings of fact and conclusions of law and shall constitute a final judgment. Perdue, *supra*, at 469, 658; State ex rel. Watson v. Hill, 200 W. Va. 201, 203, 488 S.E.2d 476, 478 (1977); W. Va. Code § 53-4A-7(c); W. Va. R. Hab. Corp. 4(c). The Court must also provide specific findings as to why an evidentiary hearing was unnecessary. Watson, *supra*, at Syl. Pt. 1; Syl. Pt. 4, Markley v. Coleman, 215 W. Va. 729, 601 S.E.2d 49 (2004). *See also* Waldron v. Scott, *supra*, at 126, 580 ("In this case, the circuit court

8

addressed and disposed of each issue set forth in the appellant's habeas petition in such an exhaustive manner that there is no question as to why the appellant was denied an evidentiary hearing.")

3. By Final Order entered herein on September 9, 2011, this Court, in reviewing Mr. Lee's habeas corpus petition, refused to grant Mr. Lee the relief requested and dismissed the petition, without conducting an omnibus hearing. Mr. Lee filed a Notice of Intent to Appeal with the Marion County Circuit Court Clerk on October 11, 2011 and appealed this Court's September 9, 2011 decision to the West Virginia Supreme Court of Appeals.

4. On January 9, 2013, the West Virginia Supreme Court of Appeals issued an opinion with respect to Mr. Lee's appeal, finding that this Court had properly denied habeas relief on Mr. Lee's ground of pre-trial publicity, but that it had erred in its determination that the remaining grounds raised in Mr. Lee's habeas petition need not be addressed in an omnibus hearing. As such, the Supreme Court remanded Mr. Lee's case to this Court for further habeas corpus proceedings.

5. The West Virginia Supreme Court of Appeals has held that an omnibus habeas corpus hearing, as contemplated in W. Va. Code §53-4A-1, *et seq.*, occurs when:

> 1) an applicant for habeas corpus is represented by counsel or appears pro se, having knowingly and intelligently waived his right to counsel; (2) the trial court inquires as to all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waives his right; and (4) the trial court drafts a comprehensive order including findings on the merits on the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding.

Syl. Pt. 1, Losh v. Mckenzie, 166 W. Va. 762, 277 S.E.2d 606 (1981). The Losh Court further held that "every person convicted of a crime shall have . . . one omnibus post-conviction habeas corpus

9

hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated." Id. at 764, 609.

6. With respect to claims that have been fully and fairly litigated, W. Va. Code § 53-4A-1(b) (1967) provides that claims shall be deemed to have been "previously and finally adjudicated" only under the following circumstances:

> [T]here was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.

7. This Court conducted an omnibus hearing on September 19, 2013, at which Mr. Lee was present in person and by his attorney, Sherman L. Lambert. Patrick N. Wilson, Marion County Prosecuting Attorney, appeared on behalf of the State of West Virginia. The parties were given the opportunity to present evidence and arguments with respect to all grounds raised in Mr. Lee's habeas petition. During the hearing, the Court heard argument from the parties' counsel on all of Mr. Lee's habeas corpus contentions. However, neither party elected to present any evidence or witnesses in support of their positions at the omnibus hearing.

8. After hearing the arguments of counsel at the September 19, 2013 omnibus hearing and reviewing Mr. Lee's habeas petition, the underlying felony matter in Marion County Circuit Court Case Nos. 08-F-1 and 08-F-78 and the March 12, 2013 Memorandum Decision from the West Virginia Supreme Court of Appeals, as well as researching the applicable law, this Court finds that Mr. Lee is entitled to no relief and that his petition for writ of habeas corpus should be DENIED. Below, the Court will discuss the grounds of its denial of each contention.

10

## GROUND I: Insufficient Evidence

9.  Mr. Lee first challenges the sufficiency of the evidence to support his convictions of Murder in the First Degree and Conspiracy to Commit Murder. Specifically, he contends that the record lacks any evidence of his guilt of any of the elements of the crimes for which he was convicted. Mr. Lee maintains that the State's First Degree Murder theory was that Mr. Lee was <u>not</u> the shooter, but merely told the shooter what the decedent looked like and where the decedent lived, and that the State failed to prove that he had any type of tacit understanding with his co-defendants to accomplish the murder. According to Mr. Lee, the record clearly establishes that he merely "repeated" what other people told him, and that he was without personal knowledge or understanding of any plan to murder the decedent.

10.  Mr. Wilson replied at the omnibus hearing that substantial evidence existed to support Mr. Lee's convictions, as all inferences are drawn in the light most favorable to the prosecution when defendants challenge the sufficiency of the evidence. *See* Syl. Pt. 3, <u>State v. Guthrie</u>, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further, Mr. Wilson claimed that Mr. Lee's July 2, 2007 inculpating statement alone is sufficient to sustain both convictions.

11.  The West Virginia Supreme Court of Appeals has consistently held that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, <u>State ex rel. McMannis v. Mohn</u>, 163 W. Va. 129, 254 S.E.2d 805 (1979), *cert denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983).

12.  With respect to claims involving the sufficiency of evidence raised in habeas petitions, the West Virginia Supreme Court has found that such claims involve allegations of ordinary trial error and do not constitute violations reviewable in a habeas corpus proceeding. *See* <u>Hilling v. Nohe</u>, No. 12-0131, 2013 WL 3185089 (W. Va. June 24, 2013). The Court has further

11

stated that, "[e]xcept in extraordinary circumstances, on a petition for habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence." Cannellas v. McKenzie, 160 W. Va. 431, 436, 236 S.E.2d 327, 331 (1977) (citing Riffle v. King, 302 F.Supp. 992 (N.D.W.Va. 1969) and Young v. Boles, 343 F.2d 136 (4th Cir. 1965)).

13. Based upon this Court's review of Mr. Lee's first habeas contention, the Court finds that Mr. Lee's argument that there was insufficient evidence to support his convictions constitutes an allegation of ordinary trial error and is not a cognizable ground in habeas corpus, and further, that no extraordinary circumstance exist to warrant a review of the evidence presented in this case. As such, this Court declines to address this assignment of error and finds that Mr. Lee's first ground for habeas corpus relief should be DENIED.

### GROUND II: Failure of Prosecutor to Disclose Exculpatory Evidence

14. Second, Mr. Lee contends that the State failed to provide exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Article III, Section 14 of the West Virginia Constitution by failing to disclose Mr. Podolsky's, a witness for the State, prior untruthfulness and the State's dissatisfaction with his veracity. Specifically, Mr. Lee argues that the State should have disclosed the fact that it believed that Mr. Podolsky was withholding information about his involvement in the crime during polygraphs, as this evidence "tends to exonerate [Mr. Lee]." Lee Habeas Corpus Petition, 30. This Court does not agree, and finds that this contention by Mr. Lee lacks merit for several reasons.

15. First, there is nothing asserted by Mr. Lee to indicate that the questionable nature of Mr. Podolsky's veracity exculpates him, despite Mr. Lee's classification of the evidence as exculpatory evidence. Importantly, Mr. Podolsky did not even implicate Mr. Lee in his polygraph statements at issue. See Lee Habeas Petition, 30, note 5. Rather, the "exculpatory" information the

12

State is alleged to have withheld from Mr. Lee is that the polygraph test data indicated a significant reaction of deception to the following two questions: (1) whether Mr. Podolsky had any participation in the planning of the shooting other than what he had indicated; and (2) whether Mr. Podolsky was withholding any information concerning the shooting. Id. Mr. Lee presented no evidence at the omnibus hearing tending to establish that the State's suspicions with respect to Mr. Podolsky's deceptive responses to these two questions constitutes exculpatory evidence. Rather, this Court is of the opinion that such evidence is merely an inferred inconsistency in Mr. Podolsky's statements and constitutes possible impeachment evidence only.

16.     With this distinction in mind, the Court acknowledges that the prosecutor has a duty to disclose favorable exculpatory evidence, as well as favorable impeachment evidence, pursuant to Brady. See State v. Youngblood, 221 W. Va. 20, 29, 650 S.E.2d 119, 128 (2007) (finding that favorable impeachment evidence is a component of Brady and Hatfield). Therefore, even though the Court is of the opinion that the allegations made by Mr. Lee with respect to Mr. Podolsky's polygraph statements do not constitute exculpatory evidence, Mr. Lee can still prevail on his second habeas claim if he can satisfy the Brady standard with respect to this Court's classification of the evidence as possible impeachment evidence.

17.     The West Virginia Supreme Court of Appeals has found that there are three components of a constitutional due process violation under Brady v. Maryland, *supra*, and State v. Hatfield, 169 W. Va. 191, 286 S.E.2d 402 (1982), as follows: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material., i.e., it must have prejudiced the defense at trial." State v. Youngblood, *supra*, at Syl. Pt. 2.

13

18. First, Mr. Lee must establish that the evidence was favorable to him as either exculpatory or impeachment evidence. As previously discussed, the Court is not satisfied that such evidence constitutes exculpatory evidence. The defendant offered no evidence to support his allegation that had the State disclosed its dissatisfaction with Mr. Podolsky's statements and veracity, such evidence would have exculpated Mr. Lee. Rather, Mr. Lee merely offered a general allegation of Mr. Podolsky's perceived untruthfulness. Mr. Lee did not produce any evidence, nor did he argue, that Mr. Podolsky was untruthful with respect to any particular statement he made against Mr. Lee at his trial.

19. However, from this Court's examination of the record, we believe such evidence could be favorable to Mr. Lee as impeachment evidence. At one point in the polygraph interview, Mr. Podolsky was asked whether he had any participation in the planning of the shooting other than what he had already indicated and if he was withholding any information concerning the shooting. Mr. Podolsky answered in the negative to both questions. However, Mr. Podolsky later provided additional information concerning his involvement in the murder not previously disclosed.

20. Mr. Podolsky was listed as a witness by the State and anticipated to testify against Mr. Lee concerning his knowledge and involvement in the murder of Mr. Osborne. Although the prior inconsistent statements given to investigators did not directly implicate Mr. Lee, Mr. Podolsky provided detailed testimony at trial concerning Mr. Lee's involvement in the murder. For example, Mr. Podolsky testified, *inter alia*, to the following: (1) that co-defendant Lafayette Jenkins and Mr. Lee had an altercation with the victim; (2) that Mr. Jenkins and Mr. Lee felt that the victim was a threat to them; (3) that Mr. Jenkins and Mr. Lee had explained their problem with the victim to Mr. Podolsky and Mr. Taylor; (4) that Mr. Lee was present when Mr. Jenkins asked Mr. Taylor if he could "take out" the victim; (5) that Mr. Lee described what the victim looked like, what car he

14

would be driving and pointed out the house where he could be located to Mr. Podolsky; (6) that Mr. Lee offered his gun for use in the murder; and (7) that Mr. Lee talked with Mr. Taylor, Mr. Jenkins and Mr. Podolsky about how the murder could take place. Lee Trial Tr. Vol. 1, 255, 258-59, 267-68, 271 and 273 (Aug. 25-29, 2008).

21. It is a well-established rule of evidence that "[t]he credibility of a witness may be attacked and impeached by any party" by a prior inconsistent statement. W. Va. R. Evid. 607; Syl. Pt. 3, State v. Collins, 186 W. Va. 1, 409 S.E.2d 181 (1990). Although the deceptive statements given by Mr. Podolsky during his interviews did not directly involve Mr. Lee, they nevertheless illustrate an inconsistency, and as the statements generally relate to the events leading up to the murder and Mr. Podolsky testified at length at Mr. Lee's trial concerning Mr. Lee's involvement in the murder, the Court is of the opinion that the prior inconsistent statements contained some degree of impeachment value. *See also* State v. Barnett, 226 W. Va. 422, 432, 701 S.E.2d 460, 470 (2010) (finding that a criminal defendant has a broad right to impeach prosecution witnesses on cross-examination with prior inconsistent statements) (citations omitted). For these reasons, the Court finds that the first component of Brady is satisfied.

22. The second component in the Brady analysis requires the petitioner to establish that the evidence was suppressed by the State, either willfully or inadvertently. The Court finds nothing in the record to suggest that the prosecutor acted willfully in suppressing the State's dissatisfaction with Mr. Podolsky's veracity and his deceptive polygraph statements, and Mr. Lee presented no evidence in support thereof. Willful suppression of the evidence, however, is not required to satisfy the second Brady component. Suppression of the evidence may occur through inadvertence by the prosecutor and still satisfy the second Brady prong. Having previously found that the evidence contained possible impeachment value for the reasons stated above, the Court is of the opinion that

15

the prosecutor had enough information about the significance of the inconsistencies of Mr. Podolsky's statements to invoke the Brady disclosure principles. Accordingly, the Court finds that the second prong of Brady is satisfied.

23. Finally, even if the evidence constituted favorable impeachment evidence and the State inadvertently failed to disclose it, the West Virginia Supreme Court has repeatedly held that such evidence must have been material. *See also* State v. Fortner, 182 W. Va. 345, 353; 287 S.E.2d 812, 820 (1989) (citing United States v. Bagley, 473 U.S. 667, 687, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)) (holding that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different).

24. This Court is of the opinion that Mr. Lee's Brady argument fails on the third prong. Mr. Lee did not produce any evidence with respect to how the State's failure to disclose Mr. Podolsky's inconsistent polygraph statements and its dissatisfaction with his veracity prejudiced his defense at trial or materially affected the results of his trial. Further, Mr. Lee did not present any witnesses or evidence at the omnibus hearing supporting his allegation that Mr. Podolsky lied at his trial. In fact, Mr. Lee did not even mention to the Court any specific statement made by Mr. Podolsky at his trial that was alleged to have been untruthful or to have had a material effect in the jury's decision.

25. Having failed to present any argument or evidence with respect to how the State's failure to disclose such evidence materially affected the outcome of his trial, the Court does not find that the State committed a Brady violation. Accordingly, the Court finds no error is present in this regard and is of the opinion that Mr. Lee's second claim for habeas corpus relief should be DENIED.

16

## GROUND III:  Improper Prosecutorial Comments

26.     Third, Mr. Lee contends that his due process rights were violated when the prosecuting attorney made improper comments regarding the evidence in the case during his opening statement and closing argument.  According to Mr. Lee, Mr. Wilson (1) mischaracterized the evidence in his opening statement and (2) confused the jury during his closing argument by "reiterating the Court's charge" and "distorting the criminal sentence of the other co-defendants."

27.     .  As previously stated herein, pursuant to the Supreme Court's holding in Syllabus Point 4 of McMannis v. Mohn, *supra*, "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed."  This Court has examined Mr. Lee's claim that the prosecutor engaged in prosecutorial misconduct by making allegedly improper remarks to the jury and does not believe that such error, even if supported by the record, would implicate Mr. Lee's constitutional rights in such a manner as to be reviewable on habeas corpus grounds.  *See also* State ex rel. Wimmer v. Trent, 199 W. Va. 644, 648, 487 S.E.2d 302, 306 (1997) (per curiam) (finding that alleged improper statements made by the prosecutor falls within the parameters of "ordinary trial error" and does not give rise to error of constitutional dimension).

28.     Therefore, the Court concludes that Mr. Lee's claim that he is entitled to habeas relief based on improper prosecutorial comments is not reviewable by way of habeas corpus. Accordingly, the Court finds that Mr. Lee's third ground for habeas corpus relief should be DENIED.

## GROUND IV:  Indictment Procured Through False Testimony

29.     Mr. Lee's fourth ground for habeas relief is his assertion that his due process rights were violated when Mr. Wilson knew or had reason to know that three individuals would provide

17

false testimony to the grand jury and the alleged false testimony was presented to the grand jury, resulting in a two count indictment being returned against him.

30. In response to Mr. Lambert's assertions, Mr. Wilson claimed that none of the three witnesses testified at Mr. Lee's trial, and that only one witness, Ms. Short, testified at a co-defendant's trial, which occurred after Mr. Lee's conviction. As such, even assuming the witnesses had in fact lied during their grand jury testimony, Mr. Wilson argued that false testimony was not presented to the jury which chose to convict Mr. Lee. However, in any event, Mr. Wilson stated that his office was not aware of any false testimony that was presented, or likely to be presented, to the grand jury when Mr. Lee was indicted, and that, accordingly, his office could not have disclosed exculpatory evidence of which it was unaware.

31. In support of Mr. Lee's assertion that three witnesses lied during their grand jury testimony, Mr. Lambert, attorney for Mr. Lee, provided the Court with a three-ring binder full of documents during the omnibus hearing. Mr. Lambert stated to the Court that some of the documents contained within the binder indicated the specific portions of testimony that each grand jury witness lied about. According to Mr. Lambert, the three witnesses were asked to provide their initials on the grand jury transcript on those portions of their testimony where they did not tell the truth. Based on their compliance with this request, Mr. Lambert tabbed the transcript concerning all portions of the "untruthful testimony" alleged to have been presented to the grand jury. As, according to Mr. Lambert, Mr. Wilson knew or had reason to know that the aforementioned witnesses would provide false testimony and the documents in the binder illustrate that false testimony was in fact presented to the grand jury, Mr. Lambert argued that Mr. Lee's due process rights were violated.

18

32. Despite the foregoing argument, Mr. Lambert made no motion to have the documents in the binder admitted into evidence. Further, no authentication was offered for these documents pursuant to Rule 901 of the West Virginia Rules of Evidence. Proper authentication would have required testimony by qualified witnesses that the documents were in fact what Mr. Lambert claimed them to be. W. Va. R. Evid., Rule 901(b). Additionally, none of the aforementioned witnesses were called to testify to corroborate Mr. Lambert's argument that they lied during their testimony and designated the grand jury transcripts in the manner stated by him.

33. Further, although Mr. Lambert stated that the documents in the binder were transferred between certain identified individuals, eventually reaching his possession, no custodial testimony was presented at the omnibus hearing. The West Virginia Supreme Court has stated that:

> It is generally held that when an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced into evidence.

State v. Charlot, 157 W. Va. 994, 1000, 206 S.E.2d 908, 912 (1974). Not only did Mr. Lambert fail to present a complete a chain of evidence of custodial possession, but also failed to produce even a single custodial witness. Rather, Mr. Lambert claimed that the evidence within the binder was presented to him during the course of his representation of another client in a later criminal prosecution and expected this Court to consider the contents of the binder on the basis of his unsupported assertions. Having failed to properly authenticate the documents relied on, this Court is merely left with Mr. Lambert's unsupported contention that grand jury witnesses were untruthful and unauthenticated, fugitive documents of which it cannot grant any consideration.

34. With respect to challenges of the validity of grand jury indictments procured on the basis of improper testimony, the West Virginia Supreme Court has held that, "[e]xcept for willful,

19

intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." State ex rel. Pinson v. Maryland, 181 W. Va. 662, 65-66, 282 S.E.2d 844, 47-48 (1989) (citing Bark v. Fox, 160 W. Va. 749, 238 S.E.2d 235 (1977)). The Pinson Court reasoned that, "[a]bsent a showing of fraud, an examination of the evidence presented to the grand jury would not be in the interests of the efficient administration of justice nor the maintenance of the integrity of the grand jury system." Fox, *supra*, at 753, 237.

35. Even assuming Mr. Lambert's assertion is true that false testimony was presented to the grand jury, the petitioner presented no evidence tending to establish that the State acted with a fraudulent intent when it allowed the three witnesses to testify. Rather, the record illustrates the opposite: allegations of possible untruthful grand jury testimony did not surface until July 2010, almost two years after Mr. Lee was convicted. Because Mr. Lee has not presented any evidence of a willful, intentional and fraudulent intent by the State in obtaining the indictment against Mr. Lee, this Court cannot dismiss the indictment.

36. In further disposing of this contention, although not specifically alleged by Mr. Lee, the Court notes that the Pinson Court also found that a defendant may be entitled to a remedy when perjured or misleading testimony is presented to a grand jury even in the absence of prosecutorial misconduct. In such instances, the Court found that the State could withdraw the indictment without prejudice if the evidence is discovered before trial. Pinson v. Maryland, *supra*, at Syl. Pt. 5 (emphasis added). Here, the evidence at issue was not discovered until after Mr. Lee was convicted.

37. As such, because the evidence of the alleged untruthful testimony presented to the grand jury was not discovered until nearly two years after Mr. Lee's trial, and Mr. Lee has presented no evidence of willful, intentional fraud by the State in the presentation of such evidence to the

20

grand jury, the Court is of the opinion that Mr. Lee's fourth habeas claim raises no cognizable ground for habeas corpus relief and should be DENIED.

## GROUND V: Improper Denial of Motion for Directed Verdict

38.     In his fifth ground for habeas corpus relief, Mr. Lee claims that his due process rights were violated when this Court denied his motion for directed verdict at the conclusion of the State's case-in-chief, as the State's case against him was "wholly circumstantial."

39.     As noted above, ordinary trial error may not form the basis for habeas corpus relief. McMannis, *supra*. The Supreme Court has further found that "evidentiary rulings fall within the gambit of ordinary trial error." Hilling v. Nohe, *supra*.

40.     This Court has looked at the trial error alleged by Mr. Lee to have been committed and does not believe that the alleged error implicates Mr. Lee's constitutional rights in such a manner as to be reviewable in habeas corpus. As such, the Court finds that Mr. Lee's fifth claim raises no cognizable ground for habeas corpus relief and should be DENIED.

## GROUND VI: Improper Denial of
## Post-Verdict Motion for Acquittal and Motion for New Trial

41.     In his sixth ground for habeas corpus relief, Mr. Lee asserts that this Court erred when it denied his Post-Verdict Motion for Acquittal and Motion for New Trial.

42.     Again, as stated above in this Court's analysis of Mr. Lee's fifth ground for habeas corpus relief, "evidentiary rulings fall within the gambit of ordinary trial error," and will not be reviewed in a habeas corpus proceeding. Hilling v. Nohe, *supra*; Syl. Pt. 4, McMannis, *supra*. *See also* State ex rel. Edgell v. Painter, 206 W. Va. 168, 522 S.E.2d 636 (1999) (finding that denial of a motion for acquittal is not a proper ground to assert in a habeas proceeding).

21

43.    As this contention by Mr. Lee does not implicate Mr. Lee's constitutional rights, the Court finds that Mr. Lee's sixth ground for habeas corpus relief is not reviewable in a habeas corpus proceeding and, accordingly, should be DENIED.

## GROUND VII: Cumulative Error

44.    The seventh ground for habeas relief asserted by Mr. Lee is cumulative error. Mr. Lee argues that the cumulative effect of the numerous errors cited herein deprived Mr. Lee of a fair trial, as required by Article III, Section 10 of the West Virginia Constitution, and due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, Section 14 of the West Virginia Constitution.

45.    With respect to cumulative error claims, the West Virginia Supreme Court of Appeals has held that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of the errors standing alone would be harmless error." Syl. Pt. 5, State v. Smith, 156 W. Va. 385, 193 S.E.2d 550 (1972).

46.    After reviewing all grounds raised in Mr. Lee's habeas petition, this Court has found no legal or factual basis supportive of any of the alleged errors cited by Mr. Lee. This is fatal to Mr. Lee's argument of cumulative error. Accordingly, the Court finds that Mr. Lee's seventh claim raises no cognizable ground for habeas corpus relief and should be DENIED.

## GROUND VIII: Unfair Pretrial Publicity

47.    In ground eight of his habeas petition, Mr. Lee claims that he was prejudiced by the "media frenzy in this case" and that the constant portrayal of him as a murderer constituted unfair pretrial publicity in violation of his due process rights.

48. Claims that have been "previously and finally adjudicated," either on direct appeal or in a previous post-conviction habeas proceeding, may not form the basis for habeas relief. W. Va. Code § 53-4A-1(b); Bowman v. Leverette, 169 W. Va. 589, 289 S.E.2d 435 (1982).

49. As this claim was fully considered by this Court in its September 9, 2011 Opinion/Final Order Refusing Petition for Writ of Habeas Corpus Ad Subjiciendum, and again by the West Virginia Supreme Court in its January 9, 2013 opinion, the Court is of the opinion that this claim has been previously and finally adjudicated and cannot serve as a basis for a habeas corpus proceeding. Accordingly, the Court finds that Mr. Lee's eighth claim raises no cognizable ground for habeas corpus relief and should be DENIED.

Accordingly, for the reasons set forth in the foregoing opinion, the Court is of the opinion to, and does hereby, **ORDER** the following:

(1) the relief requested in Mr. Lee's Petition Under W. Va. Code § 53-4A-1 for Writ of Habeas Corpus shall be, and the same is hereby, **DENIED**;

(2) Mr. Lee's convictions and accompanying sentences shall and do hereby remain in full force and effect; and

(3) the Petition Under W. Va. Code § 53-4A-1 for Writ of Habeas Corpus, filed by attorney Sherman L. Lambert on behalf of the petitioner, Donell D. Lee, shall be, and the same is hereby, **DISMISSED**, with prejudice.

Upon entry, the Court directs the Circuit Clerk of Marion County to provide certified copies of this Opinion/Final Order to Sherman L. Lambert, Esquire, at his address: Post Office Box 3200, Sheperdstown, West Virginia 25443; and to Patrick N. Wilson, Prosecuting Attorney for Marion County, at his address: 213 Jackson Street, Fairmont, West Virginia 26554.

The Circuit Clerk is further ordered to remove this case from the Court's docket.

ENTER: 11/22/13

_____

JUDGE DAVID R. JANES

A COPY          TESTE

_____

CLERK OF THE CIRCUIT COURT
MARION COUNTY, WEST VIRGINIA